UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL COUNTS,

      Petitioner,                   Case No. 10-cv-12167

v.                             HONORABLE LAWRENCE P. ZATKOFF

JEFFREY WOODS,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS AND DECLINING TO
ISSUE CERTIFICATE OF APPEALABILITY**

This is a habeas corpus action by a state prisoner, filed pursuant to 28 U.S.C. §2254. Terrell Counts ("Petitioner") was convicted by a Wayne County jury of first degree home invasion and sentenced to a term of imprisonment of 15 to 25 years as a fourth habitual offender. His petition asserts that his conviction is unconstitutional because he was denied the right to present a defense, the trial court admitted inadmissible hearsay, the prosecutor committed misconduct by shifting the burden of proof, and his appellate counsel was constitutionally ineffective. The Court has reviewed the petition and the record and finds that no constitutional violation occurred. The petition will therefore be denied.

## BACKGROUND

The victim, Bobbye Wells, knew Petitioner since 1998. Wells had a relationship with Petitioner while he was in federal prison in Pennsylvania. Wells wrote letters and visited the prison, a seven and one half hour drive from Detroit. Petitioner was released from prison on February 15, 2001. Wells testified that he had keys to her house but, at that point, she no longer wanted to be with him. She testified that he began harassing her at work and at home.

Wells testified that, in the early morning hours of April 19 or 20th, 2001, she was home with Rena Brown, a female friend with whom she had a sexual relationship. Wells' brother, Michael, was in the house, drunk and asleep in the basement. Petitioner called Wells on her house phone twice, and the second time demanded that she open the door. Wells heard a loud "bang" or "boom," and saw Petitioner running upstairs, holding a gun. Petitioner told Wells to get dressed and told her and Brown to come outside the house. There was a car parked outside, which Petitioner waved away. Petitioner, Wells and Brown then got into Brown's car, with Petitioner driving, Wells in the passenger seat and Brown in the back.

Petitioner drove the car to the west side of Detroit and parked the car. Wells testified that, for several hours, Petitioner questioned her about her relationship with Brown and with other men. During this time, Petitioner held the gun in his right hand and slammed it on the console. Petitioner then exited the car with Wells and Brown

and walked to his Range Rover, which was parked two streets away. Petitioner returned Brown to her car, and told her that he and Wells would follow her back to Wells' house.

Petitioner, Brown and Wells returned to Wells' house and walked upstairs, Petitioner still holding the gun. Petitioner removed Wells' pants and underwear and told Brown to "do what you do to her." Wells was crying. Petitioner forced Brown to perform oral sex on Wells. Petitioner had intercourse with Wells. Petitioner then demanded that Brown perform oral sex on Wells again. He masturbated and then ejaculated on Wells.

Petitioner got dressed and told Brown to go downstairs so that he and Wells could talk. They spoke for about 15 minutes. Petitioner told Wells that he loved her, and didn't want her to be with other men. Petitioner then told Wells that he was going to go downstairs and fix the door. Wells heard banging, and when she came downstairs Petitioner was at the front door, trying to fix it. Wells' brother, Michael, came upstairs, and Petitioner told him that the door had broken when he pushed it. Petitioner then left.

Wells obtained a Personal Protection Order ("PPO") and then went to the police station to file a police report. Officers from the sex crimes unit arrived at Wells' house the following day, took statements from Wells, Brown and Michael, took photographs

of the damaged front door, and took as evidence the t-shirt that Wells had been wearing the previous day.

Wells and Petitioner met a number of times in the following months.  In December, Petitioner was featured on "Michigan's Most Wanted" for another crime. Wells contacted Officer Ortiz.  She then made arrangements to meet Petitioner and gave Officer Ortiz information about the time and location.  When they met, Petitioner was arrested.

On cross-examination at trial, Wells admitted that she had filled out paperwork to have Petitioner paroled to her house, but he went elsewhere.  She acknowledged having her neck tattooed with "Mrs. Terrell C." and that she was paying for Petitioner's child support while he was in prison.  She also admitted writing threatening letters to Petitioner while he was in jail, threatening to kill him and "plot[] on" him and "get [him] back."  She acknowledged that she attempted unsuccessfully to collect a reward for turning in Petitioner.

Rena Brown testified that her relationship with Wells ended before Petitioner was released from prison, and that it ended because Wells stabbed Brown's friend with a champagne glass.  She testified that Wells called her and asked to come over on April 20.  When Brown arrived, Wells asked her to have sex with her while she was on the phone with Petitioner.  Brown testified that she spent the whole night with Wells, and

that Petitioner never came to the house that night.  She testified that she made up her statement to the police that Petitioner broke into the house and assaulted them.

Upon further questioning, Brown admitted that she had given a statement to Petitioner's counsel in which she told him that Petitioner was present on April 20 and did have sex with Wells, but that the sex was consensual.  Brown then changed her story again on the witness stand and testified that her original statement to the police was true, and that the story she told about consensual sex and about Petitioner not being there was not true.  Brown acknowledged that Petitioner had driven her to make the false statement at this lawyer's office.  Brown also testified that she was frightened because, two months earlier, two unidentified men showed up at her place of work and told her not to show up in court.

Michael Wells testified that he was staying with his sister Bobbye on April 19 and fell asleep in the basement.  The following morning he was awoken by the sound of hammering.  He went upstairs and found Petitioner hammering on the molding around the front door.  He testified that the damage to the front door had not been there the night before.  Michael testified that he went to the hardware store with Petitioner.  After returning, Michael asked Bobbye Wells and Rena Brown what happened.  Michael testified that they told him that Petitioner had broken the door and assaulted them. On cross examination, Michael acknowledged that he was currently

in prison for receiving stolen property and that his sister had called him in prison the evening before he testified.

The jury convicted Petitioner of first degree home invasion, but acquitted him of the charges of criminal sexual conduct, first degree, and felony firearm. Petitioner was sentenced to fifteen to twenty five years as a fourth habitual offender.

Following his conviction and sentence, Petitioner filed a direct appeal with the Michigan Court of Appeals. In this appeal, Petitioner raised a single claim that the sentencing variables were improperly scored, resulting in a disproportionate sentence. The Michigan Court of Appeals remanded the case to the trial court for resentencing. *People v. Counts*, No. 246717 (Mich. App. May 20, 2004). On remand, the trial court resentenced Petitioner to the same term of imprisonment.

After resentencing, Petitioner filed another appeal with the Michigan Court of Appeals. In this appeal, Petitioner raised three claims:

I.     The trial court erred when it scored offense variables 7 and 8 because there was no credible evidence to support the scoring. Further, there should have been a downward departure due to defendant's cooperation with law enforcement.

II.    The trial court erred when it used improper evidence to increase defendant's sentence in violation of the law set forth in *Blakely v. Washington*.

III.   The trial court erred when it upheld its sentence on remand yet set defendant's sentence start date on the date of resentencing.

6

The Michigan Court of Appeals affirmed Petitioner's conviction but remanded for a determination of the appropriate sentencing credit. *People v. Counts*, No. 257684 (Mich. App. Mar. 2, 2006). The Michigan Supreme Court denied leave to appeal in a standard order. *People v. Counts*, No. 131025 (Mich. Aug. 29, 2006).

Petitioner then filed a motion for relief from judgment in the trial court, through counsel, raising the claims that a raised in the present habeas petition. The motion for relief from judgment was denied on February 25, 2008, and a motion for reconsideration was denied on September 2, 2008. The Michigan Court of Appeals denied leave to appeal "for failure to establish entitlement to relief under M.C.R. 6.508(D). *People v. Counts*, No. 293865 (Mich. App, Nov. 16, 2009). The Michigan Supreme Court also denied relief under M.C.R. 6.508(D). *People v. Counts*, No. 140345 (Mich. May 25, 2010).

## STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

## ANALYSIS

Petitioner raises four claims in his federal petition for habeas relief:

I.   Petitioner was denied the right to present a defense when the trial court excluded testimony of prior acts of violence by the victim against Petitioner.

II.   The trial court erred when it admitted improper hearsay testimony that was prejudicial to Petitioner.

III.   The prosecutor committed misconduct when he shifted the burden of proof to Petitioner.

IV.   Ineffective assistance of appellate counsel.

The state responds that Petitioner's first two habeas claims are procedurally defaulted and Petitioner has not shown cause and prejudice to excuse the default, and that Petitioner's claims are without merit.

A.  Procedural Default

When the state courts rely on a valid state procedural bar in refusing to review alleged constitutional errors, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner asserts that his appellate attorney was ineffective for failing to raise his habeas claims on direct appeal, and that this constitutes cause to excuse his procedural default.  Attorney error can constitute cause to excuse a procedural default if the error rises to the level of constitutionally ineffective assistance of counsel under the standards set forth by the United States Supreme Court in *Strickland v. Washington*. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Analyzing whether an attorney's failure to raise or preserve claims constitutes ineffective assistance requires an analysis of the merits of the claims a petitioner asserts should have been, but were not, raised or preserved.

While the procedural default doctrine precludes habeas relief on a defaulted claim, it is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Judicial economy sometimes counsels reaching the merits of a claim or claims if the merits are "easily resolvable against the habeas petitioner, whereas the procedural-bar issues involve

complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Here, the cause and prejudice analysis merges with an analysis of the merits of Petitioner's habeas claim, and it is easier simply to consider the merits of Petitioner's habeas claim. *See Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009). The Court will therefore proceed to consider the merits of Petitioner's various habeas claims.

### B.   Petitioner's habeas claims

Petitioner asserts four claims in his petition. First, he asserts that the trial court denied him the right to present a defense when it excluded evidence of acts of violence committed by the victim, Bobbye Wells, against Petitioner. Second, he claims that the admission of inadmissible hearsay violated his right to due process and a fair trial. Third, Petitioner asserts that the prosecutor violated his right to due process when he stated in closing arguments that evidence was "uncontroverted." In his final claim for relief, Petitioner asserts that the failure of his appellate counsel to raise these claims on direct review constitutes ineffective assistance of appellate counsel, which is cause to excuse his procedural default.

### 1.   Claim #1:  The denial of the right to present a defense claim.

On the first day of trial, counsel brought to the Court's attention allegations that the victim, Wells, assaulted Petitioner sometime after the events forming the basis for the charges against Petitioner. Defense counsel noted specifically a report dated May 11, 2001, in which Wells allegedly shot at Petitioner's car. Immediately afterwards,

10

Petitioner drove to the 9th precinct and made out a report.  A later incident involved a knife in Oak Park.  Wells was never charged in these assaults.  Defense counsel sought to cross examine Wells on these incidents, arguing that they were relevant to Wells' motive to lie and demonstrated that she was intent on carrying out the threats in her letters to Petitioner to  to kill him and "plot[] on" him and "get [him] back," and that they were therefore relevant to her intent to fabricate her charges against Petitioner.  The trial court excluded the incidents on the grounds of relevance and potential for confusion.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. U.S. Const. Amend. VI.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (quotation omitted).  Nonetheless, a criminal defendant does not have an unlimited right to cross-examine a witness to any extent and in any manner he chooses.  A trial court has the discretion to limit the scope of cross examination "based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (citing *Delaware v. Van Arsdall*, 475 U.S. 673,679 (1986)).

"[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)) (emphasis original). "[O]nce a trial court permits a defendant to expose a witness's motivation, 'it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer the point home to the jury.'" *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009) (quoting *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir. 1994)). The Confrontation Clause is not violated when a trial court places limits on cross-examination that do not deny a criminal defendant the opportunity to establish that the witness had a motive to lie, bur rather "denied them the opportunity *to add extra detail* to that motive." *Id.* (quoting *Nelson*, 39 F.3d at 708) (emphasis original).

In this case, Petitioner's confrontation rights were not violated by the refusal of the trial court to permit him to cross-examine Wells on her alleged assaults against him. First, the facts surrounding the assaults were in dispute. Petitioner had only his own complaints filed with the police to support his version, while Wells, when she was questioned about them at Petitioner's preliminary examination, denied that they ever occurred. Furthermore, the alleged assaults by Wells against Petitioner occurred after Wells had allegedly been raped and reported that rape to the police, and therefore have little bearing on her credibility at the time she made her initial statement, which

was consistent with her testimony at trial.  Finally, Petitioner's theory of bias - that Wells was angry with him and fabricated the assault to get even with him for seeing other women - was exhaustively explored by defense counsel at trial.    Wells acknowledged her attachment to Petitioner while he was in prison.  She was questioned in detail about and admitted writing threatening letters to Petitioner while he was in jail.  Through Wells, Petitioner was able to admit the contents of three letters that Wells wrote Petitioner while in prison, in which Wells stated:

> You'd better do some soul searching, figure out what you really want because if you're not sure and some shit happens when you get out, I can't say what I'll do.

> Hopefully I'll just leave you alone, but when it comes to hard love I don't know, so just think about it because I'm sure you wouldn't want as much drama as I could give you.

> You're going to be plotted on just like the next motherfucker.  I will get you back.

*People v. Counts*, No. 02-1170-01, at 3 (Wayne Co. Cir. Ct. Feb. 25, 2008) (order denying motion for relief from judgment).  The exclusion of the alleged assaults by Wells against Petitioner did not deprive the jury of the opportunity to assess the facts supporting Petitioner's theory of bias, but merely excluded disputed facts, of very marginal relevance to Wells' credibility.

Petitioner also asserts that the exclusion of the assaults violated his right to present a defense. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right under

the due process clause to present his own evidence and witnesses to establish a defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Washington v. Texas*, 388 U.S. 14, 19 (1967). On the other hand, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, has been reluctant "to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. Trial court judges have "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

The trial court here excluded evidence of the alleged attacks on Petitioner by Wells because of questionable relevance, confusion of the issues and the possibility of misleading the jury. The Supreme Court has held that the general evidentiary rules permitting the exclusion of such evidence are "familiar and unquestionably constitutional." *Egelhoff*, 518 U.S. at 42. A petitioner challenging the exclusion of evidence excluded under such a rule "must sustain the usual heavy burden that a due

process claim entails." *Id.* at 43.  When evidence is excluded under such a rule, such exclusion does not violate due process  unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).

In this case, the exclusion of questions regarding the assaults by Wells against Petitioner did not offend fundamental principles of justice.  The facts were disputed, the questions collateral, and far more relevant facts regarding Wells' credibility were thoroughly presented to the jury.  *Cf. Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (due process not violated by exclusion of contested evidence that murder victim sexually abused his sons when exclusion did not go to the essence of "talk therapy" defense, but merely eliminated detail).

Moreover, although Petitioner was prohibited from introducing evidence that the victim had assaulted him, he was not prevented from presenting his defense claim. Petitioner was permitted to introduce evidence that the victim had a number of disputes with him prior to the events of April 19 and 20th, and that she had written him threatening letters,  Exclusion of the evidence concerning Wells' conduct afterwards did not go to the "essence" of petitioner's defense, but involved a mere "detail-an important detail, to be sure, but a detail nonetheless." *Rockwell*, 341 F.3d at 513.

Petitioner is not entitled to habeas relief on his first claim.

2.   Claim #2: the admission of hearsay claim

Petitioner's second habeas claim asserts that the trial court erred when it permitted Michael Wells to repeat a statement that Rena Brown told him. Specifically, Michael testified that Brown told him on April 20 that Petitioner kicked in the door, had a gun, forced Wells and Brown to perform sex acts, and made them leave the house at gunpoint. These statements were elicited after Brown changed her story several times on the stand. Petitioner asserts that this was improper under state evidentiary rules, violated his constitutional rights, and denied him a fair trial.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Habeas corpus review of evidentiary rulings based on state law is "extremely limited." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006) (quotation omitted).  A trial court evidentiary ruling only violates due process if it is so egregious that the petitioner was denied a fundamentally fair trial. *Id.*

The admission of Michael's testimony repeating Brown's statements on the date in question did not violate Petitioner's due process rights because they were admitted pursuant to a valid state evidentiary rule and did not violate fundamental principles of justice.  The trial court held that the testimony was not hearsay, because it was not offered to prove the truth of the allegations but rather offered to rehabilitate Brown's

16

credibility. *See People v. Counts*, No. 02-1170-01, at 5 (Wayne Co. Cir. Ct. Feb. 22, 2008) (opinion denying motion for relief from judgment). This holding, that the statement was properly admitted as a matter of Michigan law, is completely binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Nor did the admission of Brown's statements through Michael violate the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004) ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements").

To the extent that Petitioner's hearsay claim is based on Michigan evidence law, habeas relief is not available because claims based on state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner is not entitled to habeas relief on this claim.

### 3. Claim #3: Shifting the burden of proof

Petitioner third claim on habeas argues that the prosecutor violated his right to due process by improperly commenting on his failure to produce witnesses, thereby shifting the burden of proof.

During rebuttal closing arguments, the prosecutor asked the jury to find Petitioner guilty on all counts because the evidence was "uncontroverted from the testimony from the witnesses that you heard from in this case." T IV, 16. Defense counsel moved for a directed verdict based on this statement, arguing that the statement shifted

the burden of proof from the prosecution to the defense and implicitly commented on Petitioner's failure to testify.

A prosecutor's direct reference to a criminal defendant's failure to testify violates that defendant's Fifth Amendment right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 613 (1965).  On the other hand, "[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than defendant could have contradicted the evidence." *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983).

Where a claim is made that the prosecutor indirectly commented on a defendant's silence, the court should consider:

> (1) whether the comments were manifestly intended to reflect on the accused's silence or are of such a character that the jury would "naturally and necessarily" construe them as such; (2) whether the comments were isolated or extensive; (3) whether there was otherwise overwhelming evidence of guilt; and (4) whether appropriate curative instructions were given.

*United States v. Wells*, 623 F.3d 332, 338 (6th Cir. 2010) (quotations omitted).

Petitioner relies on *Girts v. Yanai*, 501 F.3d 743 (6th Cir. 2007) to argue that the prosecutor's statement here warrants habeas relief.  *Girts* is not on point, however, because that case involved direct references to the defendant's failure to testify. In *Girts*, the prosecutor quoted the defendant and stated "these are his words.  And the words you heard from these folks supplied by him are unrefuted, and they are uncontroverted. *There has been no evidence* offered to say these people are incorrect.

None at all." *Girts*, 501 F.3d at 755(emphasis original).  The Court of Appeals noted that by indicating that Girts was the only person that could explain the crime, the prosecution "highlighted the fact that Petitioner did not testify, and attached a negative connotation to the exercise of the Fifth Amendment right to remain silent." *Id.* at 756. Compare *Wells*, 623 F.3d at 338 (statement that jury was "entitled to hear from all of the participants in this scheme" neither a direct nor an indirect comment on the defendant's failure to testify).  Here, as in *Wells*, the prosecutor's commented were directed to the evidence and not on Petitioner's failure to testify.

While it is improper for the prosecution to impliedly shift the burden of proof to a defendant, see *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), it is not erroneous for the prosecutor to point out that the defense theory lacks evidentiary support.  *Cockream v. Jones*, 382 F. App's 479, 486 (6th Cir. 2010).  Here, the prosecutor permissibly commented on the nature of the evidence.  See *United States v. Kuehne*, 547 F.3d 667, 690 (6th Cir. 2008) (the government may comment on defendant's failure to call witnesses to contradict government's witnesses as long as he does not suggest defendant has burden of proving innocence or testifying). Furthermore, the trial court instructed the jury on the burden of proof during trial, and jurors are presumed to follow the court's instructions.  *United States v. Powell*, 469 U.S. 57, 66 (1984).

Petitioner has not established that the prosecutor committed misconduct, or that he was denied a fundamentally fair trial. Habeas relief is not warranted on this claim.

### 4. Claim 4: Ineffective assistance of appellate counsel

In his final claim for habeas relief, Petitioner asserts that his appellate counsel was constitutionally ineffective because he failed to raise Petitioner's first three habeas claims on direct appeal. As discussed in greater detail above, none of Petitioner's first three habeas claims have merit. Because Petitioner's habeas claims lack merit, the failure of his appellate counsel to raise them is not ineffective assistance of appellate counsel. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### CERTIFICATE OF APPEALABILITY

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong.

## CONCLUSION

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus.  The Court further DENIES a certificate of appealability.

SO ORDERED.


<u>s/Lawrence P. Zatkoff</u>
LAWRENCE P. ZATKOFF
United States District Judge

Dated: November 15, 2013